1

2

3

4                          UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7    REESE TURBIN, et al.,                      Case No. 25-cv-03388-EMC   (EMC)

8                   Plaintiffs,

9         v.                                    **ORDER GRANTING DEFENDANT'S
                                                MOTIONS TO COMPEL
10   THUMBTACK, INC.,                           ARBITRATION**

11                  Defendant.                  Docket Nos. 12 & 15

12

13        Defendant Thumbtack Inc. ("Thumbtack") is a technology company that matches

14   homeowners with service professionals (*e.g.*, roofers, plumbers, dog walkers).  Qualified

15   professionals post their business profiles on Thumbtack's platform and purchase "leads" to

16   homeowners who are interested in hiring a professional in their field.  Plaintiffs Reese Turbin,

17   Jennifer Brookman, Christi Clingan, Jared Gilford, Erica Reese, Mauricio Serrano, and Michael

18   Seybert (collectively, "Plaintiffs") are such professionals – including graphics designers, pet-

19   sitters, and handymen – who made accounts with Thumbtack to obtain customers and business.

20   Plaintiffs allege that the "leads" they bought from Thumbtack were fraudulent and bring state law

21   claims on behalf of a class for (1) fraudulent concealment and misrepresentation (2) violation of

22   the California Unfair Competition Law (3) unjust enrichment (4) violation of the California False

23   Advertising Law (5) breach of implied contract and (6) violation of the Consumer Legal Remedies

24   Act.  Thumbtack moves to compel all claims to arbitration and stay these proceedings in the

25   meantime.

26        Having considered the parties' briefs, as well as the oral arguments of counsel, the Court

27   **GRANTS** Thumbtack's motion to compel arbitration.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

## I.    FACTUAL BACKGROUND

Plaintiffs Brookman, Turbin, Clingan, Seybert, and Gilford created Thumbtack accounts prior to 2018.[1]  Plaintiff Serrano made his account in 2021, and Ms. Reese made hers in 2023.

Prior to 2018, the parties appear to agree that Thumbtack's terms of use did not contain a binding arbitration clause.  Dkt. No. 17 at 7.  In 2018, Thumbtack updated its terms of service, adding a binding arbitration clause ("2018 Terms").  *Id.*  When users who had accounts prior to November 2018 logged in for the first time after the update, they were directed to a screen stating that Thumbtack had updated its Terms of Use.  Dkt. No. 17-1.  The new 2018 Terms were hyperlinked.  Dkt. No. 17-2.  The screen included a checkbox to accept the new terms and stated "We won't be able to log you in until you accept the Terms of Use and Privacy Policy. If you prefer to review and come back later, you can log out here."  *Id.*  The screen is reproduced below:

## Updated Terms of Use and Privacy Policy

We have updated our Terms of Use and Privacy Policy. For more information, visit the FAQ page.

☐ By checking this box and clicking Accept I agree to the Terms of Use and Privacy Policy.



We won't be able to log you in until you accept the Terms of Use and Privacy Policy. If you prefer to review and come back later, you can log out here.

The first paragraph of the 2018 Terms states:

> **"IMPORTANT NOTICE: THIS AGREEMENT CONTAINS A BINDING ARBITRATION PROVISION AND CLASS ACTION WAIVER. IT AFFECTS YOUR LEGAL RIGHTS AS DETAILED IN THE ARBITRATION AND CLASS ACTION WAIVER SECTION BELOW. PLEASE READ CAREFULLY."** Dkt. No. 12-2.

The phrase "ARBITRATION AND CLASS ACTION WAIVER SECTION" was blue and hyperlinked to the section of the agreement containing the Arbitration and Class Waiver section.

---

[1] Ms. Brookman created an account in 2011, Mr. Turbin in 2013, Ms. Clingan in 2015, Mr. Seybert in 2015, and Mr. Gilford in 2016.

1    *Id.*  The 2018 Arbitration Section began:

2

3         **"ARBITRATION AND CLASS ACTION WAIVER**

4         PLEASE READ THIS SECTION CAREFULLY. IT AFFECTS YOUR LEGAL RIGHTS, INCLUDING YOUR RIGHT TO FILE A LAWSUIT IN COURT."  *Id.* at 11.

5    The 2018 Arbitration Section contained a delegation clause and an opt-out:

6

7         "The arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability, or formation of these Terms or the Privacy Policy, including but not limited

8         to any claim that all or any part of these Terms or Privacy Policy is void or voidable, whether a claim is subject to arbitration, or the question of waiver by litigation conduct.

9         The arbitrator shall be empowered to grant whatever relief would be available in a court under law or in equity. The arbitrator's award shall be written and shall be binding on the

10        parties and may be entered as a judgment in any court of competent jurisdiction."  *Id.* at 12.

11        …

12        *"30-Day Right to Opt Out*: You have the right to opt out and not be bound by the arbitration and class action waiver provisions set forth above by sending (from the email

13        address you use on Thumbtack) written notice of your decision to opt out to opt-out@thumbtack.com with the subject line, "ARBITRATION AND CLASS ACTION

14        WAIVER OPT-OUT." The notice must be sent within thirty (30) days of the later of the Effective Date of these Terms or your first use of the Platform; otherwise, you shall be

15        bound to arbitrate disputes in accordance with the terms of those paragraphs. If you opt out of these arbitration provisions, Thumbtack also will not be bound by them."  *Id.* at 13.

16

17

18        In 2021, when Plaintiff Serrano signed up for Thumbtack, the parties dispute which exact

19   screen he saw, but agree that the screen included language stating that "By clicking [Sign

20   Up/Create Account], [I/you] agree to the Terms of Use and Privacy Policy."  Dkt. No. 20 at 17;

21   Dkt. No. 21-2.

22

23

24

25

26

27

28

United States District Court
Northern District of California

3



In 2022, Thumbtack updated its terms of service again ("2022 Terms").  The 2022 update

was accompanied by an email, stating:

> "Thumbtack continues to grow and evolve. To keep things running smoothly, We're updating our Terms of Use on November 7th, 2022. You can currently view both the existing and the new Terms of Use here.
>
> These updates address a variety of new product features we've rolled out recently, including the option to pay for projects through Thumbtack, Thumbtack Plus, and our home guidance checklist. The updates also address feedback we've heard from pros and consumers, and make our Terms of Use easier to read and understand.
>
> Please read the new Terms of Use carefully and ensure you understand them. By continuing to use Thumbtack after November 6th, you are agreeing to the new Terms of Use.
>
> Thank you for being a loyal Thumbtack user. We are excited to continue growing with you."

Dkt. No. 17-1.

The email hyperlinked to the new 2022 Terms.  *Id.*  The parties have not identified any

4

United States District Court
Northern District of California

1    material differences between the arbitration provisions in the 2018 and 2022 Terms, and the later

2    Terms still hyperlinked at the top to the arbitration section.

3           Users creating accounts after the 2022 update, including Plaintiff Reese, viewed the screen

4    reproduced below:



18                                      Dkt. No. 17-3.

19          In 2025, Thumbtack updated its Terms of Use again.  Dkt. No. 12-4.  All plaintiffs opted

20   out of the arbitration and class action waiver provisions of the 2025 Terms, so these terms are not

21   at issue.  *See* Dkt. Nos. 14-2-14-8.

22

23   **II.      DISCUSSION**

24   *A.  Assent to the Arbitration Agreement and Delegation Clause*

25          The Federal Arbitration Act requires district courts to compel arbitration if a valid

26   arbitration agreement exists and applies to the claims at issue.  *Berman v. Freedom Fin. Network*,

27   LLC, 30 F.4th 849, 855 (9th Cir. 2022).  State law principles of contract formation govern — in

28   this case, California law.  *Id.*  Formation of a contract under California law requires mutual assent.

5

1    *Id.* In the online context, assent is typically determined through conduct. *See id.* at 856. Even

2    where an online user does not have actual knowledge of an agreement to arbitrate, mutual assent

3    may be found if there was (1) reasonably conspicuous notice and (2) an unambiguous

4    manifestation of consent. *Id.* Courts categorize online agreements on a "spectrum" ranging from

5    browse wraps to clickwraps. *Oberstein v. Live Nation Entm't, Inc*., 60 F.4th 505, 513 (9th Cir.

6    2023). A "pure clickwrap" "request[s] that users click on a box to confirm agreement before

7    proceeding." *Id.* at 515. Such agreements are "routinely" enforceable. *Id.* Where a website

8    provides an action button, with blue hyperlinked terms directly above or below it, and states that

9    by clicking the button, the user agrees to the hyperlinked terms, the Ninth Circuit has held that

10   there is constructive notice of the terms. *Id.* at 516. Under these circumstances, clicking the

11   button constitutes an unambiguous manifestation of consent. *Id.* at 517.

12          The 2018 Terms update screen viewed by the pre-2018 plaintiffs is a classic click-wrap

13   agreement. The terms are disclosed through a blue hyperlink and the plaintiff had to actively click

14   a box to agree to the terms. The large, bolded language at the top of the page referring to updated

15   terms reinforces that notice was conspicuous.

16          The screens viewed by Plaintiffs Serrano and Reese in 2021 and 2023 land farther down

17   the spectrum from pure click-wrap than the 2018 screen. Under *Oberstein*, these kinds of "action

18   button" wraps are acceptable when clearly hyperlinked terms are in immediate proximity to the

19   action button and the website states that clicking the action button constitutes agreement to those

20   terms. The parties dispute which screen Plaintiff Serrano saw when he signed up in 2021, but both

21   potential screens contain blue hyperlinks that led directly to the Terms of Use, in immediate

22   proximity of an action button, and a clear statement that clicking the action button – whether "Sign

23   Up" or "Create Account" – means agreeing to the terms of use. The screen viewed by Plaintiff

24   Reese in 2023 shares these attributes. These screens are sufficient to show mutual assent under

25   the Ninth Circuit's constructive notice framework. *Oberstein*, 60 F.4th at 516.

26          Once an arbitration agreement is established to exist between parties, the next question for

27   a court is typically whether that arbitration agreement covers the instant dispute. Some arbitration

28   agreements, though, contain "delegation clauses" that delegate to the arbitrator "gateway questions

United States District Court
Northern District of California

United States District Court
Northern District of California

1    of arbitrability, such as whether the agreement covers a particular controversy." *Caremark, LLC*

2    *v. Chickasaw Nation*, 43 F.4th 1021, 1029 (9th Cir. 2022).  While arbitration is generally favored,

3    the question of arbitrability is a recognized "exception to this policy." *Howsam v. Dean Witter*

4    *Reynolds*, 537 U.S. 79, 83, 123 S. Ct. 588, 591 (2002).  "Courts should not assume that the parties

5    agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so."

6    *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *accord Brennan v. Opus*

7    *Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015).  This is an "interpretive rule" that is built upon the

8    what the contracting parties "would likely have expected a court to have decided." *Howsam v.*

9    *Dean Witter Reynolds*, 537 U.S. 79, 83 (2002).  Parties do not normally assume arbitrability will

10    be determined by the arbitrator, and hence assent requires a clear and unmistakable manifestation

11    of that intent.

12          Here, the delegation clause states that:

13    "The arbitrator, and not any federal, state, or local court or agency, shall have exclusive
      authority to resolve all disputes arising out of or relating to the interpretation, applicability,
14    enforceability, or formation of these Terms or the Privacy Policy, including but not limited to any
      claim that all or any part of these Terms or Privacy Policy is void or voidable, whether a claim is
15    subject to arbitration, or the question of waiver by litigation conduct."

16          The text of this clause appears unambiguous in its delegation to the arbiter.  Further, the

17    bolded notice at the top of both sets of terms hyperlinks the reader directly to the arbitration

18    section.  At the top of the section, the reader is again cautioned to read the section

19    "CAREFULLY" since it affects "LEGAL RIGHTS."  This is not a case in which the barriers to

20    locating the delegation clause prevent a finding of clear and unequivocal intent by users to

21    delegation arbitrability.  *Cf Schlueter-Beckner v. SimpliSafe, Inc.*, No. 3:25-cv-01764 (CRB), 2025

22    U.S. Dist. LEXIS 146568, at *22-23 (N.D. Cal. July 30, 2025) (delegation clause buried in AAA

23    Rules incorporated into already "dense" Terms of Service did not satisfy the Supreme Court's

24    "heightened standard" to find delegation of arbitrability).  Accordingly, Thumbtack meets the

25    heightened standard of assent for delegation clauses.

26

27

28

1        *B. Whether the Delegation Clause Is Unconscionable*

2        An agreement assented to by both parties may still be void for unconscionability. Since

3    "unconscionability is a defense to contracts generally and does not single out arbitration

4    agreements for special scrutiny, it is also a valid reason not to enforce an arbitration agreement

5    under the FAA." *Circuit City Stores v. Adams*, 279 F.3d 889, 895 (9th Cir. 2002). Where a

6    contract delegates arbitrability issues to an arbitrator, a court may only decide the

7    unconscionability of a contract if the delegation clause is itself unconscionable. *See Pandolfi v.*

8    *Aviagames, Inc.*, No. 23-cv-05971-EMC, 2024 U.S. Dist. LEXIS 159007, at \*7 (N.D. Cal. Sep. 4,

9    2024) *aff'd* at No. 24-5817 (9th Cir. Aug. 27, 2025).

10        A party claiming unconscionability to defeat arbitration "must demonstrate procedural and

11    substantive unconscionability." *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1000 (9th Cir. 2021).

12    Procedural unconscionability "focuses on oppression or surprise due to unequal bargaining

13    power." *Lim*, 8 F.4th at 1000*; see also Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080, 1090

14    (9th Cir. 2024) (quoting *OTO, LLC v. Kho*, 8 Cal.5th 111, 113 (Cal. 2019). Procedural

15    unconscionability may be established either "by showing the contract was one of adhesion or by

16    showing from the 'totality of the circumstances surrounding the negotiation and formation of the

17    contract' that it was oppressive." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir.

18    2017). The presence of a meaningful opt-out clause generally renders an agreement non-

19    adhesive. *Circuit City Stores v. Ahmed,* 283 F.3d 1198, 1199 (9th Cir. 2002). Even if an

20    agreement is non-adhesive, the Court stills examines whether the totality of the circumstances

21    show oppression and surprise. *Poublon*, 846 F.3d at 1260; *see also Ronderos*, 114 F.4th at 1089;

22    *Baghdasarian v. Macy's Inc.*, No. 24-3438, 2025 U.S. App. LEXIS 7838, at \*4-5 (9th Cir. Apr. 3,

23    2025) (mem.).

24        Here, the Arbitration Agreement is not adhesive because it contained a meaningful opt-out

25    clause. The clause provided Plaintiffs with thirty days to opt-out by sending an email to

26    Defendant. While Plaintiffs argue that this opt-out was "illusory" because Plaintiffs had to accept

27    the Agreement in order to log in again to their accounts, nothing prevented Plaintiffs from

28    accepting the terms, logging in, and then opting out by email within the 30-day window. Dkt. No.

United States District Court
Northern District of California

1    14 at 27.  There was nothing hidden or onerous about the opt out process here; nor were the

2    consequences of failing to opt out particularly surprising.  *Cf. Rios v. HRB Digital LLC*, No. 25-

3    cv-03530-EMC, Order Denying Motion to Compel Arbitration dated October 27, at p. 10.

4         Although the agreement was not adhesive, the Court must also consider whether the

5    "totality of the circumstances surrounding the negotiation and formation of the contract" show

6    oppression or surprise, as procedural unconscionability may be found even where the contract is

7    non-adhesive.  *See Poublon*, 846 F.3d at 1260; *Baghdasarian*, 2025 U.S. App. LEXIS 7838, at *4-

8    5.  The Court does not find indicia of unfair surprise here.  As discussed above, the Terms directly

9    hyperlinked users to the Arbitration Section of the agreement, and the opt-out clause appears as its

10   own paragraph in the section, emphasized by a header.  Moreover, the delegation clause is not

11   difficult to find, it is not buried in prolix, and its language was plain.  In contrast to *Rios*, there was

12   nothing substantively surprising about the delegation clause and its implications.  As to

13   oppression, Plaintiffs argue that their "livelihoods depended on access to their Thumbtack

14   accounts."  Dkt. No. 44 at 11, 13-14.  However, as Thumbtack noted, Plaintiffs may advertise their

15   services and connect with customers through "other similar services" such as Angie's List (a

16   service that Plaintiffs themselves reference in their complaint).  Dkt. No. 43 at 5; Compl., Dkt. No.

17   1 ¶ 3.  This is not the employment context, where a plaintiff's livelihood may be directly at stake,

18   and does not otherwise involve access to some essential service.  *See e.g., Lim*, 8 F.4th at 1001

19   (9th Cir. 2021).  Nor has it been demonstrated that there was any special urgency associated with

20   signing up or renewing users' Thumbtack account.  *Cf. Rios, supra,* at p. 11, 15 (arbitration

21   agreement imposed in midst of tax season).  There is no evidence Plaintiffs risked, *e.g.,* losing

22   current clients who were previously acquired through Thumbtack.

23         Because the agreement was not one of adhesion and the totality of the circumstances does

24   not show surprise or oppression, the Court finds that the delegation clause is not procedurally

25   unconscionable and therefore does not proceed to evaluate substantive unconscionability.

26

27         ***

28         Because the Arbitration Agreements includes an enforceable delegation clause, the

United States District Court
Northern District of California

1   question of arbitrability falls to the arbiter, not this Court.

2

3         III.      **CONCLUSION**

4               For the forgoing reasons, Thumbtack's motion to compel arbitration is **GRANTED** and

5   the case is **STAYED** pending the resolution of arbitration.

6

7         **IT IS SO ORDERED**.

8

9   Dated: October 28, 2025

10

11   _____

12   EDWARD M. CHEN
     United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California